UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ENTRETELAS AMERICANAS S.A.,

                                   :      19-cv-3658 (LAK)

                     Plaintiff,

                                   :

  - against -

                                   :

RAFAEL IGNACIO SOLER,

                                   :

                     Defendant.
----------------------------------------------------------------x

## PLAINTIFF'S NOTICE OF APPEAL

           Notice is hereby given that plaintiff Entretelas Americanas SA appeals to the United States Court of Appeals for the Second Circuit from the Court's Order (ECF No. 29) (*see* annexed Exhibit 1) dismissing the complaint on the Report and Recommendation (ECF No. 26) (*see* annexed Exhibit 2) of U.S. Magistrate Judge R. W. Lehrburger and from each and every part of the Order and the Report and Recommendation.

Dated: New York, New York
     March 31, 2020                   Respectfully submitted,


                                   PAUL BATISTA, P.C.

                                   By:_____
                                     Paul Batista
                                   Attorney for Plaintiff
                                    Entretelas Americanas SA
                                   26 Broadway, Suite 1900
                                   New York, New York 10004
                                   (631) 388-0111
                                   Batista007@aol.com

To: All Counsel on Service List
   Clerk of the Court

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ENTRETELAS AMERICANAS S.A.,

                                    Plaintiff,

            -against-                                          19-cv-3658 (LAK)

RAFAEL IGNACIO SOLER,

                                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER**

LEWIS A. KAPLAN, *District Judge.*

            Substantially for the reasons stated in the report and recommendation of Magistrate
Judge Robert W. Lehrburger [DI 26], the complaint is dismissed without prejudice to the filing of
an amended complaint on or before April 7, 2020.  Plaintiff's objections [DI 27], to the extent that
they are objections, are overruled.

            SO ORDERED.

Dated:      March 10, 2020

                                              _____
                                                    Lewis A. Kaplan
                                              United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/10/2020

# Exhibit 2

USBC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_ 2/3/2020 _

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ENTRETELAS AMERICANAS S.A.,                          :          19 Civ. 03658 (LAK) (RWL)
                                                     :
                        Plaintiff,                   :     **REPORT AND RECOMMENDATION**
                                                     :        **TO HON. LEWIS A. KAPLAN:**
                                                     :           <u>**MOTION TO DISMISS**</u>
           - against -                               :
                                                     :
RAFAEL IGNACIO SOLER,                                :
                                                     :
                        Defendant.                   :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Entretelas Americanas S.A. ("Entretelas" or "Plaintiff") filed suit against its

former Chief Executive Officer, Defendant Rafael Ignacio Soler ("Soler" or "Defendant").

Entretelas alleges, *inter alia*, that Soler diverted its corporate funds over approximately a

decade, ending with his departure from the company in 2017. The Complaint alleges

three claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"); a

breach of contract claim premised upon the parties' employment agreement; and an

unjust enrichment claim.  Plaintiff estimates its damages to exceed seven million dollars.

Now before the Court is Soler's motion to dismiss the Complaint on multiple

grounds.  (Dkt. 15.)  Soler argues, *inter alia*, that the RICO claims are legally meritless;

this Court lacks jurisdiction over the remaining claims; and even if the Court did exercise

jurisdiction over the remaining claims, they too would be meritless.  The Court agrees,

and for the following reasons, recommends that Soler's motion be GRANTED and the

action dismissed.

1

**Procedural History**

Entretelas initiated this action on February 22, 2019 in New York County Supreme

Court by a Summons with Notice, and Soler removed it to this Court by filing a Notice of

Removal on April 24, 2019.  (Dkt. 1.)  The case was assigned to the Honorable Lewis A.

Kaplan, U.S.D.J. On April 29, 2019, Judge Kaplan referred the case to the undersigned

for general pretrial management and dispositive motions.  (Dkt. 4.)  Entretelas filed a

federal court Complaint, now the operative pleading, on May 16, 2019.  (Dkt. 5.)  The

Complaint asserts five causes of action: (I) Violation of RICO, 18 U.S.C. § 1962(c)

predicated on mail and wire fraud; (II) Money Laundering in violation of RICO, 18 U.S.C.

§ 1956; (III) Extortion in violation of RICO, 18 U.S.C. § 1951; (IV) Breach of Employment

Agreement; and (V) Unjust Enrichment.

On September 13, 2019, Soler filed his motion to dismiss (Dkt. 15), which included

a Memorandum of Law in Support ("Def. Mem.") (Dkt. 16) and the Declaration of Richard

W. Trotter in Support with Exhibits 1-3 ("Trotter Decl.") (Dkt. 17.)  After two extensions,

Entretelas filed its opposition to the motion on December 10, 2019, including the

Declaration of Paul Batista in Opposition with Exhibits 1-3 ("Batista Decl.") (Dkt. 22) and

a Memorandum of Law in Opposition ("Pl. Mem.") (Dkt. 23).  On January 16, 2020, Soler

filed his Memorandum of Law in Reply.  (Dkt. 24.)

**Factual Background[1]**

Entretelas, registered in France and headquartered in Argentina, is a business

entity engaged in wholesale trade of textiles, among other activities.  (Complaint ¶¶ 8,

---

[1] In accordance with the standard for assessing a motion to dismiss, all non-conclusory
facts described herein are derived from Plaintiff's Complaint, and accepted as true, and
all reasonable inferences are made in Plaintiff's favor.  *See Erickson v. Pardus*, 551 U.S.

17.)  The Complaint does not allege that Entretelas maintains any business operations or earns any profits in the United States.  (Complaint ¶ 17.)  Soler was an executive-level employee of Entretelas and its Chief Executive Officer ("CEO") for many years.  (Complaint ¶ 3.)  He worked for Entretelas in various capacities between January 1, 1999 and sometime in 2017.  (Complaint ¶¶ 4, 10.)

Though he had already been working there for about five years, Soler's relationship with Entretelas was memorialized through an Employment Agreement dated July 26, 2004 (the "Employment Agreement").[2]  (Batista Decl., Ex. 3.)  The Employment Agreement provides for an annual salary, subject to adjustment for inflation, to be paid partially in American currency and partially in Argentinean currency. (*Id.*)  The Employment Agreement provides that Soler would be based in the company's Argentina headquarters and states that he had certain loyalties to Entretelas: "You will devote all of your time, experience and attention to carrying out your work; you will not be directly or indirectly involved in any work outside of the Company."  (*Id.*; Complaint ¶¶ 16-17.)

The Employment Agreement includes a confidentiality provision, requiring Soler to "observe secrecy regarding . . . work and . . . not disclose any information, manufacturing processes [and] know-how which you may learn during the course of your work, neither during nor after the contract period" including prohibiting him from "writ[ing] articles for the press [or] giv[ing] speeches related to your activity . . . ."  (*Id.*; Complaint ¶¶ 11-12.)  The

---

89, 94 (2007); *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013).  In addition to the Complaint, the Court also draws upon statements and documents incorporated into the Complaint by reference, as well as matters of which judicial notice may be taken. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (citing *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

[2] The Employment Agreement acknowledges that Soler had been serving as "General Manager for South America since January 1, 1999." (*Id.*; Complaint ¶ 10.)

Employment Agreement further includes a non-compete provision, providing that for a period of three years, Soler agrees "to refrain from directly or indirectly working, in any way and in any form, for any company with activities related to the production and/or marketing of woven and non-woven products for interfacings and shirts, in all countries in South and North America, and to not "take any direct or indirect stake in such a company." (*Id.*; Complaint ¶ 15.)  The non-compete commitment "is binding regardless of the reasons and circumstances related to the cancellation of the contract."  (*Id.*)

The Complaint alleges that Soler breached various aspects of this Employment Agreement.  First, Entretelas claims that Soler diverted various monies from Argentinian bank accounts into American ones.  The Complaint alleges that between 2007 and 2017, Soler "ordered that significant portions of his salary . . . and other remuneration . . . be transferred from foreign sources to banks and other financial institutions in the United States."  (Complaint ¶ 21.)  Entretelas further alleges that discovery will show that the transfers in question involved "thousands of dollars" and were "designed to evade payment of foreign and United States taxes."  (Complaint ¶¶ 23-24.)

Second, Entretelas alleges that Soler filed a legal claim in Argentina in 2017 that contained false and defamatory information (the "Argentina Action").  Statements from the Argentina Action that Entretelas contends are false include (among others) statements that Soler was merely a "simple worker" and not CEO of Entretelas; that Entretelas paid Soler "off the books" while denying him bonuses and other compensation; that Entretelas' treatment of Soler caused him physical and emotional damage; and that Entretelas demanded $7 million from Soler.  (Complaint ¶¶ 19, 26.)  Entretelas claims

4

that all these statements in the Argentina Action are false and designed to obfuscate Soler's obligations under the Employment Agreement.[3]  (Complaint ¶ 20.)

Third, the Complaint alleges that Soler failed to fulfil his commitment to "devote his full-time efforts and loyalty" to Entretelas.  (Complaint ¶ 25.)  Soler purportedly established two companies in the textile industry, Rasol S.A. and Loomtex S.A., during his employment, and was "a major shareholder of DHJ Industries, Inc."  (*Id*.)  Although the Complaint does not explicitly plead that DHJ Industries was a competitor, it does allege that this conduct violated the contractual "non-ownership" provision of the Employment Agreement.  (*Id*.)

The Complaint parlays Soler's alleged misconduct into five causes of action.  The first three claims allege racketeering under RICO based on mail and wire fraud, money laundering and extortion.  The fourth claim is for breach of the Employment Agreement, and the fifth claim is for unjust enrichment.

**Legal Standard for Motion to Dismiss**

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct

---

[3] A copy of the document Entretelas refers to as the Argentina Action is attached to the declaration of Plaintiff's counsel. (Batista Decl., Ex. 2.) That document does not bear a caption, government stamp, or case number. Neither party states whether this document is a pleading in an Argentinian court, or some sort of private tribunal. Although the national language of Argentina is Spanish, the document is in English, including a lengthy personal narrative by Soler about his disputes with Entretelas. Regardless, the Court accepts as true Plaintiff's allegation that this document pertains to a legal action filed by Soler in Argentina.

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must accept all factual claims in the complaint as true, and "draw[ ] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotations omitted); *see also Clavin v. County of Orange*, 620 Fed. App'x 45, 47 (2d Cir. 2015) (in deciding motions to dismiss, courts must "accept[] all factual allegations as true and draw[] all reasonable inferences in the non-moving party's favor."); *Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909, 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013) (same).

This tenet, however, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks omitted). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

For the purposes of considering a motion to dismiss pursuant to 12(b)(6), a court generally is confined to the facts alleged in the complaint. *Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents

attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, and public records. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (citing *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group. Inc.*, No. 11 Civ. 559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012).

### Discussion

Soler moves to dismiss on multiple grounds.[4]  First, Soler argues that the RICO claims fail to state a cause of action under the relevant statutes and also fail to meet applicable pleading standards.  Second, with respect to common law claims for breach of the Employment Agreement and unjust enrichment, Soler argues that this Court lacks subject matter jurisdiction in the absence of a cognizable federal claim.  Alternatively, Soler argues that the common law claims should be dismissed on *forum non conveniens* grounds.  For the reasons discussed below, the Court agrees and recommends dismissal of all five causes of action.

---

[4] In Soler's pre-motion letter, he primarily argued that dismissal is required because this Court lacks personal jurisdiction over him. (Dkt. 6.) Soler asserted that he is a resident of Florida who visits New York only occasionally for medical treatment, and argued that the Complaint does not assert any substantive connection between the underlying dispute and New York. Plaintiff's opposition alleges that Soler has a "significant presence" in New York, but without any details or support for that assertion. (Pl. Mem. at 1.) Regardless, in Soler's motion, he noted that "in light of the numerous substantive deficiencies in Entretelas' claims – Soler waives his jurisdictional argument so as to allow the Court to dismiss the Complaint on the merits." (Def. Mem. at 1.) Accordingly, the Court need not address potential issues related to personal jurisdiction.

7

A.    **RICO Claims**

The Complaint asserts three causes of action under RICO.  The First Cause of Action alleges a violation of RICO, 18 U.S.C. § 1962(c) citing the predicate acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343);[5] the Second Cause of Action alleges the predicate act of money laundering in violation of RICO, 18 U.S.C. § 1956; and the Third Cause of Action alleges the predicate act of extortion in violation of RICO, 18 U.S.C. § 1951. The Court begins its analysis by discussing the general standards governing all claims under civil RICO and the required elements of such claims.  The Court then discusses why the Complaint fails to meet all requisite elements.  Finally, the Court discusses why each of the predicate acts alleged in the Complaint – mail fraud, wire fraud, money laundering, and extortion – also fails to state a claim, independently requiring dismissal.  Ultimately, the Court finds that all three RICO claims should be dismissed.

1.   **Limits of Civil RICO**

Courts have frequently described civil RICO as an extreme cause of action and "'an   unusually   potent   weapon   –   the   litigation   equivalent   of a thermonuclear device.'"  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (internal citations omitted). "Because the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on

---

[5] As discussed in greater detail below, the First Cause of Action is styled as alleging a "Violation of RICO 1962(c)." (*See* Complaint ¶ 32.) That provision of RICO, however, is the broad provision under which all three RICO claims are made, each citing different predicate acts. Accordingly, the First Cause of Action is better understood as alleging a violation of RICO for the predicate acts of mail fraud and wire fraud as those are the specific statutory offenses invoked by the First Cause of Action. (*See* Complaint ¶ 30.)

those named as defendants . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Id.*; *see also Bell v. Hubbert*, No. 95 Civ. 10456, 2007 WL 60513, at *5 (S.D.N.Y. Jan. 8, 2007) (same); *DLJ Mortgage Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010) ("plaintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations"). Plaintiffs "wielding RICO almost always miss the mark." *Flexborrow LLC v. TD Auto Finance LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017) (citing *Gross v. Waywell*, 628 F.Supp.2d 475, 479-83 (S.D.N.Y. 2009) (conducting survey of 145 civil RICO cases filed in the Southern District of New York from 2004 through 2007, and finding that all cases resolved on the merits resulted in judgments against the plaintiffs, mostly at the motion to dismiss stage).

Accordingly, courts have generally approached civil RICO claims with a skeptical eye. In this case, that skepticism is well justified. As explained below, the Complaint does not meet the baseline standards for a RICO action, nor does it sufficiently plead the required predicate acts.

### 2. Elements of a RICO Claim Under 18 U.S.C. § 1962(c)

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). RICO provides a private civil cause of action, allowing that "[a]ny person injured

in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court."  18 U.S.C. § 1964(c).

To state a violation of § 1962(c), a plaintiff must plead four elements: "'(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity.'"  *Anatian v. Coutts Bank Ltd.,* 193 F.3d 85, 88 (2d Cir. 1999) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)); *see also S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.,* 84 F.3d 629, 633 (2d Cir.1996) ("[A] plaintiff must allege that a defendant, 'employed by or associated with' an enterprise affecting interstate or foreign commerce, conducted or participated in the conduct of this enterprise's affairs 'through a pattern of racketeering activity.'" (quoting 18 U.S.C. § 1962(c); *Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 17 (2d Cir. 1983)).  The Court analyzes each of these four elements below.

### a.  The Complaint Pleads a Baseline Level of "Conduct"

A civil RICO plaintiff must allege that a defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of [an] enterprise's affairs."  18 U.S.C. § 1962(c).  The Supreme Court has interpreted this statutory language broadly to mean that the RICO defendant must have somehow participated "in the operation or management of the enterprise."  *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) (citing *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993)); *see also First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004) (holding that "'one is liable under RICO only if he participated in the operation or management of the enterprise itself'") (quoting *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 521 (2d Cir.1994)).  Under this standard, a person may not be held liable merely for taking directions and performing tasks that are "necessary and helpful to the enterprise," or for providing "goods and

services that ultimately benefit the enterprise." *United States Fire Insurance Co. v. United Limousine Service, Inc.*, 303 F. Supp. 2d 432, 451-52 (S.D.N.Y. 2004) (internal citations and quotations omitted).  Instead, "the RICO defendant must have played '*some* part in directing [the enterprise's] affairs.'" *First Capital Asset Management,* 385 F.3d at 176 (quoting *DeFalco,* 244 F.3d at 310) (emphasis and brackets in original).

In the Second Circuit, "the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." *Id.* at 177 (internal citations omitted); *see, e.g.*, *Baisch v. Gallina*, 346 F.3d 366, 376-77 (2d Cir. 2003); *United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir.1998) (holding the question whether defendant "operated or managed" the affairs of an enterprise to be essentially one of fact); *AIU Insurance Co. v. Olmecs Medical Supply, Inc.*, No. 04 CV 2934, 2005 WL 3710370, at *8 (E.D.N.Y. Feb. 22, 2005) ("[W]here the role of the particular defendant in the RICO enterprise is unclear, plaintiffs may well be entitled to take discovery on this question.").

Here, Entretelas pleads that Soler was an executive at the company and engaged in various bad acts while working there.  (Complaint ¶¶ 29-32.)  Based on the allegations in the Complaint, which the Court must accept as true for purposes of the instant motion, and based on the low bar for this first element, these allegations are enough to establish "conduct."

### b.  The Complaint Pleads an "Enterprise"

As for the second element, the Complaint pleads that Entretelas itself is the "enterprise."  (Complaint ¶ 29.)  This is a somewhat unusual configuration for a RICO action; the "enterprise" is typically the defendant in a RICO case, not the plaintiff.

Nevertheless, Entretales has plead the required elements to establish an "enterprise" within the meaning of the statute to avoid dismissal on this basis.

A RICO enterprise is defined broadly and includes any "individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Such an enterprise need not be a formal; the statute is satisfied by a showing of a formal or informal group of persons, "associated together for a common purpose of engaging in a course of conduct" which then functions as a "continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also United States v. Morales*, 185 F.3d 74, 80 (2d Cir. 1999). Defendants alleged to be members of the enterprise unit must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve" their goal. *First Capital Asset Management*, 385 F.3d at 174. In support of a claim that there exists a RICO enterprise, a plaintiff must also plead that a defendant participated in the "operation or management" of the enterprise. *Id.* at 175-76. This requires a showing that each had "some part" in "directing the enterprise's affairs." *Reves*, 507 U.S. at 179.

A corporate entity such as Entretelas certainly qualifies as an "enterprise." And Soler – as former CEO of Entretelas – participated in "directing the enterprise's affairs" within the meaning of the statute. *First Capital Asset Management,* 385 F.3d at 176. Accordingly, Plaintiff has successfully plead the existence of an enterprise.

### c. The Complaint Pleads a "Pattern" of Activity

The Complaint also pleads the pattern of racketeering activity necessary to survive dismissal on this ground. A plaintiff seeking to demonstrate a pattern of racketeering activity under 18 U.S.C. § 1962 "must allege (1) at least two predicate acts of racketeering

occurring within a ten-year period; (2) that the predicate acts are related to each other; and (3) that the predicate acts amount to or pose a threat of continued criminal activity." *United States Fire Insurance Co.*, 303 F. Supp. 2d at 448 (citing *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,* 187 F.3d 229, 242 (2d Cir.1999); *H.J. Inc. v. Northwestern Bell,* 492 U.S. 229, 239 (1989)).

A plaintiff may satisfy the continuity requirement "by alleging either a close-ended pattern – that is, criminal conduct extending over a substantial period of time – or an open-ended pattern, i.e., past criminal conduct coupled with a threat of future criminal activity." *Liberty Mutual Insurance Co. v. Blessinger*, No. 06 CV 391, 2007 WL 951905, at *12 (E.D.N.Y. March 27, 2007) (citing *H.J. Inc.,* 492 U.S. at 242). Since the Supreme Court outlined these standards in *H.J. Inc.,* "the Second Circuit has never held a period of less than two years to constitute a substantial period of time for purposes of closed end continuity.'" *Id.* (quoting *Oak Beverages, Inc. v. Tomra of Massachusetts, L.L.C.,* 96 F. Supp. 2d 336, 347 (S.D.N.Y. 2000)).  To establish a "pattern of racketeering activity," a plaintiff must plead at least two predicate acts, and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity. *GICC Capital Corp. v. Tech. Fin. Group, Inc.,* 67 F.3d 463, 465-466 (2d Cir.1995) (citing *H.J. Inc.,* 492 U.S. at 239). "Predicate acts are related if they have the 'same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Davis Lee Pharmacy, Inc., v. Manhattan Central Capital Corp.,* 327 F. Supp. 2d 159, 164 (E.D.N.Y. 2004) (citing *H.J. Inc.,* 492 U.S. at 240).

Here, the Complaint pleads a closed-ended pattern of criminal conduct. All criminal conduct – mail fraud, wire fraud, money laundering, and extortion – is alleged to have occurred while Soler was still CEO of Entretelas over a period of more than two years. (Complaint ¶¶ 23-24.) While the legal validity of these predicate acts is a separate matter addressed below, the Complaint properly pleads the continuity of their duration.

### d. The Complaint Pleads "Racketeering Activity," But Without Stating Any Legally Cognizable Claims

"Racketeering activity" is defined in 18 U.S.C. § 1961 with a list of the predicate "acts" and "offenses" that must underlie a RICO claim. It is not the acts or offenses in isolation but the pattern of such acts or offenses that constitute the racketeering activities that are necessary for the existence of a RICO violation. *See* 18 U.S.C. § 1961; *CMG Holdings Group. v. Wagner*, No. 15 Civ. 5814, 2016 WL 4688865, at *3 (S.D.N.Y. Sept. 7, 2016) (listing potential offenses). These criminal acts specified in 18 U.S.C. § 1961 are colloquially referred to as "RICO 'predicates.'" *European Community v. RJR Nabisco, Inc.*, 783 F.3d 123, 124 (2d Cir. 2015). They commonly include claims of mail fraud, wire fraud, money laundering, and extortion, all of which are alleged in the Complaint. Accordingly, Plaintiff has plead "racketeering activity" as defined by 18 U.S.C. § 1961.

But although the Complaint sufficiently pleads some of the basic elements of a RICO claim, it entirely fails to state a claim for any of the predicate acts and thus fails to state a RICO claim at all. [6] The Court will next address those deficiencies.

_____

[6] Soler argues, as another potential basis for dismissal of the Complaint's three RICO claims, that Plaintiff has failed to state a "domestic injury" and that such an injury is a prerequisite for RICO liability. (Def. Mem. at 7-10.) Entretelas, in turn, counters that the application of the "domestic injury" requirement is an unsettled area of law in light of a recent decision from the Second Circuit. (Pl. Mem. at 12-17, citing *Bascuñán v. Elsaca*, 927 F.3d 108 (2d Cir. 2019).) Because there are other independent grounds for dismissal

### 3. All RICO Claims Fail to Sufficiently Plead "Predicate Acts"

Entretelas' RICO claims are grounded on alleged predicate acts of mail and wire fraud, money laundering and extortion. The Complaint fails to plausibly plead any one of these, thus requiring dismissal.

#### a. Mail and Wire Fraud

Entretelas has failed to sufficiently plead the predicate acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).

A RICO complaint alleging mail and wire fraud as predicate acts must show "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc.,* 84 F.3d at 633. "The term 'scheme to defraud' is measured by a non-technical standard reflecting fundamental notions of honesty, fair play and right dealing." *AIU Insurance Co.*, 2005 WL 3710370 at *10. It has been described as "a plan to deprive a person 'of something of value by trick, deceit, chicane or overreaching.'" *Id.* (quoting *United States v. Autuori,* 212 F.3d 105, 115 (2d Cir.2000)). "In order to state a RICO claim on the basis of wire or mail fraud, '[t]he use of the mails need not be essential to the fraudulent scheme as long as the mailing is incident to an essential part of the scheme.'" *Republic of Colombia v. Diageo North America, Inc.*, 531

---

of Plaintiff's three RICO claims, the Court need not base its conclusions on whether Entretelas has properly stated a qualifying domestic injury under RICO.

F. Supp. 2d 365, 442 (E.D.N.Y. 2007).   Fraud "require[s] a misrepresentation or concealment of material fact." *Neder v. United States,* 527 U.S. 1, 22 (1999).

RICO claims for mail and wire fraud are subject to the stricter pleading requirements for all allegations of fraud under Federal Rule of Civil Procedure 9(b). *In re Sumitomo Copper Litigation*, 995 F. Supp. 451, 455–56 (S.D.N.Y. 1998) (noting pleading requirements).   Rule 9(b) reads: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other condition of mind of a person may be alleged generally." Fed. R. Civ. P. 9(b). In order to comply with Rule 9(b), a complaint must "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Colony at Holbrook, Inc. v. Strata G.C., Inc.*, 928 F. Supp. 1224, 1230 (E.D.N.Y. 1996) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)); *Trautz v. Weisman*, 809 F. Supp. 239, 246 (S.D.N.Y. 1992) ("With a fraud claim, the time, place, speaker and content of the alleged misrepresentation must be specified").   For reasons explained earlier (the potential for unfairly stigmatizing a defendant), Rule 9(b) has "even greater urgency" in civil RICO actions. *Schmidt v. Fleet Bank,* No. 96 Civ. 5030, 1998 WL 47827, *5 (S.D.N.Y. Feb. 4, 1998) (quoting *Morin v. Trupin,* 778 F. Supp. 711, 716 (S.D.N.Y. 1991)).   Accordingly, the "overwhelming trend" among courts is to apply Rule 9(b) strictly in order to effect dismissal of civil RICO suits" alleging mail and wire fraud. *In re Sumitomo Copper Litigation*, 995 F. Supp. at 455.

Here, the First Cause of Action contains no particular examples of mail or wire fraud. Searching elsewhere in the Complaint, Plaintiff alleges that the Argentina Action

"filed in 2017 and transmitted to the United States by mail and wire[ ] is replete with false and fraudulent allegations." (Complaint ¶ 26.) But the Complaint does not allege the essential elements of mail or wire fraud, namely that Soler had an intent to defraud, who precisely was defrauded, or what detrimental reliance resulted from the allegedly false statements.[7] *See, e.g., Ritchie v. Taylor*, 701 F. App'x 45, 47-48 (2d Cir. 2017) (noting that mail fraud and wire fraud both require defendant's specific intent under RICO); *FindTheBest.com, Inc. v. Lumen View Technology LLC*, 20 F. Supp. 3d 451, 458 (S.D.N.Y. 2014) ("Because a plaintiff must show that he is 'injured in his business or property by reason of' a pattern of mail or wire fraud, reliance is an essential part of demonstrating causation between a defendant's misrepresentation and the plaintiff's injury) (quoting 18 U.S.C. § 1964(c)).

The first RICO claim for racketeering therefore cannot withstand Soler's motion to dismiss. *See Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) (dismissing RICO claims for lack of specificity and citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to [defendant]" without particularity); *Spool v. World Child International Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (holding that the plaintiff's mail and wire fraud allegations were not "pled with the requisite particularity" under Rule 9(b)). Here, the Complaint's lack of specificity fails to satisfy the rigorous

---

[7] The only "misrepresentations" alleged in the Complaint relate not to allegations of mail and wire fraud, but rather to the allegedly false and defamatory statements contained in the Argentina Action, which is simultaneously the basis for Plaintiff's extortion claim. This is but one example of how the Complaint conflates or confuses legal concepts; mail and wire fraud are predicate acts that have different elements than extortion.

pleading standards of Rule 9(b). Accordingly, the claim for mail and wire fraud cannot survive dismissal.

The First Cause of Action also should be dismissed for failure to sufficiently plead causation. The RICO statute "limits standing to plaintiffs whose injuries were both factually and proximately caused by the RICO violation." *In re American Express Co. Shareholder Litigation,* 39 F.3d 395, 399 (2d Cir.1994); *Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 480 (S.D.N.Y. 2015) ("To state a civil RICO claim, a plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well'") (quoting *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268 (1992)). "Proximate cause for RICO purposes requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Id.* (brackets in original).

Plaintiff has failed to plead with particularity how Defendant's alleged mail and wire fraud has caused any harm. Instead, Entretelas makes a conclusory and generalized allegation that Soler's conduct has resulted in damages "believed to exceed $7 million" (Complaint ¶ 33) but contains no allegations as to how Soler's mail and wire fraud caused harm, in that amount or any other amount. Thus, even if the Complaint were to plead a cognizable violation of 18 U.S.C. § 1962(c) for mail and wire fraud, it fails to plead causation between the alleged violation and resulting harm to Entretelas with any degree of particularity or plausibility and should be dismissed for that reason as well. *See, e.g., Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132, 147 (2d Cir. 2018) (affirming dismissal of RICO claim partially predicated on mail fraud where "[plaintiff] failed

adequately to allege that these predicate acts of racketeering proximately caused its injuries"); *Toohey v. Portfolio Recovery Associates, LLC*, No. 15 Civ. 8098, 2016 WL 4473016, at *10 (S.D.N.Y. Aug. 22, 2016) (dismissing RICO claim with predicate acts of mail and wire fraud where plaintiff failed to allege with particularity how defendant's conduct resulted in damage); *Leung v. Law*, 387 F. Supp. 2d 105, 121 (E.D.N.Y. 2005) (dismissing mail and wire fraud claims and fining that "[n]one of the defendants' purported racketeering activities has been adequately alleged to have been the proximate cause of [plaintiff's] injuries").

### b. Money Laundering

Plaintiff's Second Cause of Action asserts that Defendant engaged in the predicate act of money laundering as defined in 18 U.S.C. § 1956, subjecting him to liability under RICO. (Complaint ¶¶ 34-37.) As defined in 18 U.S.C. § 1956(a)(1)(B)(i), a defendant is liable for money laundering when: "knowing that [ ] property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity-knowing that the transaction is designed in whole or in part-to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."

To state a claim for money laundering under RICO, a plaintiff must plead: "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity as defined in [18 U.S.C.] § 1956(c)(7); (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the

financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds." *Dale v. Banque SCS Alliance S.A.*, No. 02 Civ. 3592, 2005 WL 2347853, at *5 n.2 (S.D.N.Y. Sept. 22, 2005) (citing *United States v. Maher*, 108 F.3d 1513, 1527-28 (2d Cir.1997)); *In re 650 Fifth Ave. & Related Properties*, 777 F. Supp. 2d 529, 559 (S.D.N.Y. 2011) (same); *Casio Computer Co. v. Sayo*, No. 98 Civ. 3772, 2000 WL 1877516, at *16 (S.D.N.Y. Oct. 13, 2000) (same).

Here, Plaintiff has failed to plead most of the core elements of money laundering. The Complaint successfully pleads the first element – that Soler conducted a financial transaction. Entretelas alleges that Soler ordered "significant portions of his salary, director's fees, bonuses, reimbursement for expenses, profit sharing and other remuneration be transferred from foreign sources to banks . . . in the United States." (Complaint ¶ 21.) But critically, as to the second element, Entretelas does not allege how these monies were "the proceeds of specified unlawful activity." *Dale*, 2005 WL 2347853, at *5, n.2.   To the contrary, Entretelas alleges that these moneys were forms of "remuneration from plaintiff" – that is, salary and compensation to which Soler was apparently entitled.  (Complaint ¶¶ 3, 21.)  The Complaint thus fails to sufficiently set forth the second element required for money laundering.  *See West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ. 8606, 2004 WL 2187069, at *10 (S.D.N.Y. Sept. 29, 2004) ("In the absence of adequate allegations as to the existence of a specified unlawful activity, [RICO plaintiff] has failed to adequately plead money laundering as a predicate racketeering activity [to support] its civil RICO claim"); *Casio Computer Co.*, 2000 WL 1877516, at *16-17 (a RICO plaintiff "must plead all elements of

the offense" in order to adequately plead money laundering as a predicate act under RICO and withstand motions to dismiss).

Entretelas also has not met the third and fourth elements of the claim involving scienter – that the defendant "*knew* that the property involved in the financial transaction represented the proceeds of some form of unlawful activity" and that the defendant "*knew* that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, [or] control" of the monies. *Dale*, 2005 WL 2347853, at \*5 (emphasis added).  Put differently, the Complaint does not allege that Soler knew that the monies he supposedly transferred to American banks were the product of illegal activity, or that Soler knew that his transfer would conceal the illegal monies.  *See Rosner v. Bank of China*, 528 F. Supp. 2d 419, 429 (S.D.N.Y. 2007) (plaintiff must plead all essential elements of the offense including scienter); *Zhu v. First Atlantic Bank*, No. 05 Civ. 96, 2005 WL 2757536, at \*3 (S.D.N.Y. Oct. 25, 2005) ("plaintiff insufficiently alleges the scienter element of . . . money laundering").

At best, the Complaint makes conclusory statements such as stating that the transfers were "illicit" (Complaint ¶ 22) and that Soler transferred the monies to avoid unspecified taxation.  (Complaint ¶ 24.)  Such threadbare allegations do not meet the pleading requirements for particularity and plausibility under *Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 557.  *See Jus Punjabi LLC v. Get Punjabi US, Inc.*, 640 Fed. Appx. 56, 58 (2d Cir. 2016) (affirming dismissal of RICO claim for failure to plead that transfer involved proceeds of unlawful activity); *Schlesinger v. Schlesinger*, No. 05 CV 5016, 2007 WL 9706976, at \*9 (E.D.N.Y. Feb. 8, 2007) (dismissing RICO claims where "Plaintiff's allegation of money laundering consists of the conclusory assertion that [defendant] used

various corporations to . . . launder funds. This conclusory statement fails to satisfy the essential elements of the statute"); *Casio Computer Co.*, 2000 WL 1877516, at *17 (dismissing money laundering RICO claim based on "sweeping allegations" that "only provide conclusory statements that defendants' transactions were conducted with the purpose of concealing 'the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity'") (internal citations omitted)); *Bernstein v. Misk*, 948 F. Supp. 228, 236 n.2 (E.D.N.Y. 1997) (dismissing RICO action predicated on money laundering due to "conclusory assertions . . . unsupported by any facts"). Accordingly, the Second Cause of Action for RICO money laundering should be dismissed.

### c. Extortion

Entretelas alleges that Soler has "falsely and fraudulently" asserted various allegations in the Argentina Action. (Complaint ¶¶ 19-20, 26.) These allegedly false claims are the basis for Plaintiff's Third Cause of Action for Extortion in Violation of RICO, 18 U.S.C. §§ 1951 and 1962. (Complaint ¶¶ 38-43.) The allegations, however, do not state a viable cause of action.

Extortion is defined by 18 U.S.C. § 1951(b)(2) as "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Applying that definition, courts have held that RICO applies to extortionate acts where they constitute a "wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Park South Associates v. Fischbein*, 626 F. Supp. 1108, 1114 (S.D.N.Y. 1986), *aff'd*, 800 F.2d 1128 (2d Cir. 1986) (quoting 18 U.S.C. § 1951(b)(2)).

22

Here, as in *Park South Associates*, "[n]othing in the pleadings alleges anything to do with force, violence or fear." *Park South Associates*, 626 F. Supp. at 1114. Instead, Entretelas alleges that Soler asserted false allegations against it in the Argentina Action and that Soler "persistent[ly]" demanded various payments. (Complaint ¶ 41.) The absence of allegations of force, violence or fear is fatal to Entretelas' extortion claim. *See, e.g., Batlle v. Associates For Women's Medicine, PLLC*, No. 05 Civ. 8373, 2006 WL 2642137, at *7 (S.D.N.Y. Sept. 15, 2006) ("plaintiff's extortion allegation is insufficient because it does not allege any 'wrongful use of actual or threatened force, violence, or fear'") (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992)); *Kimm v. Lee*, No. 04 Civ. 5724, 2005 WL 89386, at *6 (S.D.N.Y. Jan. 13, 2005) (dismissing RICO claim premised on alleged threats to banish plaintiff from his community as the complaint failed to allege that such acts included any threat of force, violence, or fear); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 137 (E.D.N.Y. 2010) (holding that allegations of extortion under RICO were "insufficient" when focused only on defamation); *Andrea Doreen Ltd. v. Building Material Local Union 282*, 299 F. Supp. 2d 129, 149 (E.D.N.Y. 2004) (rejecting RICO extortion claim and noting that under both federal law, 18 U.S.C. § 1951, and New York State law, N.Y. Penal Law § 155.05(2)(e), extortion must involve "threat of force, violence, or fear").

To the extent that Entretelas suggests it "feared" the Argentina Action, courts routinely have rejected the argument that legal action can be a predicate act in the RICO context. *See, e.g., FindTheBest.com, Inc.*, 20 F. Supp. 3d at 457 ("fil[ing] frivolous lawsuits with the wrongful intent and effect of causing fear of economic loss [or] the

instigation of meritless litigation cannot constitute extortion [or constitute] predicate acts"

under RICO).  As explained by one court:

> The law is clear that litigation – even if frivolous or malicious – cannot constitute
> extortion. 'There are sound policy reasons against recognizing the instigation of
> meritless litigation as a RICO predicate act. Recognizing such litigation as a
> predicate RICO act would give complainants unprecedented access to federal
> courts and the treble damage remedy authorized under RICO. Such a significant
> extension of RICO's reach is best made, if at all, by Congress. Moreover, allowing
> these suits to proceed as RICO suits risks chilling parties resort to the judicial
> system to resolve their disputes.'

*Ritchie v. Northern Leasing Systems, Inc.*, No. 12 Civ. 4992, 2016 WL 1241531, at \*13

(S.D.N.Y. March 28, 2016), aff'd sub nom. *Ritchie v. Taylor*, 701 F. App'x 45 (2d Cir.

2017) (quoting *FindTheBest.com, Inc.*, 20 F. Supp. 3d at 457).  *See also G-I Holdings,*

*Inc. v. Baron & Budd,* 179 F.Supp.2d 233, 259 (S.D.N.Y. 2001) ("Threats of litigation, and

even threats of meritless litigation or the actual pursuit of such litigation, have been held

not to constitute acts of extortion"); *von Bulow by Auersperg v. von Bulow*, 657 F. Supp.

1134, 1143-45 (S.D.N.Y.1987) (malicious prosecution is not a predicate act for RICO

purposes).

    In short, even if Entretelas' allegations are correct and Soler's statements in the

Argentina Action are false or defamatory, that conduct cannot constitute a predicate

action for extortion under RICO.  No other allegation in the Complaint supports a claim

for extortion.  Accordingly, the Third Cause of Action for RICO extortion should be

dismissed.

**B.**    **Breach of Contract and Unjust Enrichment Claims Should Be Dismissed**

    Having determined that the Complaint does not state a viable cause of action

under RICO, the Court now considers Entretelas' two remaining claims: the Fourth Cause

of Action for Breach of Contract (Complaint ¶¶ 44-47) and Fifth Cause of Action for Unjust

Enrichment (Complaint ¶¶ 48-50).   As discussed below, the Court lacks original jurisdiction over these claims and should decline to exercise jurisdiction over them given the absence of any federal cause of action.   Alternatively, the Court should exercise its discretion to dismiss them on the basis of *forum non conviens*.

### 1. The Court Lacks Original Jurisdiction Over the Fourth and Fifth Causes of Action

Both the Fourth and Fifth Causes of Action are common law claims under state law predicated on the employment relationship between Soler and Entretelas. To determine whether this Court should hear these claims, it must first determine whether it has independent jurisdiction over them on the basis of either federal question or diversity, and second, must determine whether, in the absence of such jurisdiction, it should exercise supplemental jurisdiction to hear the claims anyway. The answer to both questions is no.

First, the Court plainly does not have federal question jurisdiction over Plaintiff's Fourth and Fifth Causes of Action.   *See* 28 U.S.C. § 1331 (vesting federal district courts with jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States").   The Fourth and Fifth Causes of Action do not cite to any federal law or authority that would raise a federal question under 28 U.S.C. § 1331.   (*See generally*, Complaint ¶¶ 44-47, 48-50.)

Second, without a federal claim, diversity jurisdiction would be the only potential avenue into an American federal court.   *See* 28 U.S.C. § 1332 (to obtain federal jurisdiction in diversity, a case must have diversity of citizenship and an amount in controversy in excess of $75,000).  The Complaint successfully alleges the first element of diversity jurisdiction: that the parties are diverse. Entretelas is a French company doing

25

business in Argentina (Complaint ¶ 3) and Soler is alleged to be a United States citizen residing in Florida with occasional presence in New York.  (Complaint ¶¶ 4, 28.)

However, Entretelas fails to allege the second critical element to establish diversity jurisdiction: the amount in controversy.  While the Complaint alleges damages "in an amount to be determined at trial but believed to exceed $7 million" for all three of its RICO claims (Complaint ¶¶ 33, 37, 43), it does not do so for the breach of contract and unjust enrichment claims.  Rather, it merely alleges "in an amount to be determined at trial" without reference to any particular amount.  (Complaint ¶¶ 47, 50.)  No factual allegations made in the Complaint allow the Court to calculate or intuit the damage totals with respect to these two causes of action – certainly not to establish damages above the $75,000 threshold.  Entretelas thus has failed to plead the requisite amount in controversy to qualify for diversity jurisdiction.  *See, e.g., Brown v. Microsoft Corp.*, No. 19 Civ. 6649, 2019 WL 4805572, at *2 (S.D.N.Y. Oct. 1, 2019) (dismissing action where "Plaintiff has not pleaded facts that, if true, would allow her to recover sufficient damages to invoke the Court's diversity jurisdiction"); *Garrett v. Western Union*, No. 19 Civ. 7500, 2019 WL 6619298, at *3 (S.D.N.Y. Dec. 3, 2019) (dismissing action where "Plaintiff's complaint does not allege any facts suggesting that his claims satisfy the jurisdictional amount for a diversity action, an amount in excess of the sum or value of $75,000"); *Gilot v. Equivity c/o ID Experts*, No. 18 CV 3492, 2018 WL 3653150, at *3 (E.D.N.Y. July 31, 2018) (same).

Accordingly, the Court lacks original jurisdiction to hear Plaintiff's Fourth and Fifth Causes of Action.

**2.  The Court Should Decline to Exercise Supplemental Jurisdiction Over the
    Fourth and Fifth Causes of Action**

In some circumstances, courts may exercise supplemental jurisdiction over "other

claims that are so related to claims in the action within such original jurisdiction that they

form part of the same case or controversy."  28 U.S.C. § 1367(a).  Here, however, there

is no basis for the exercise of supplemental jurisdiction over the Fourth and Fifth Causes

of Action.  Supplemental jurisdiction under 28 U.S.C. § 1367 is discretionary.  A court

need not hear a claim for which it would lack original jurisdiction if "there are . . . compelling

reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(4).  A district court thus "may

decide to refuse to exercise supplemental jurisdiction if (1) the state law claim raises a

novel or complex issue of state law, (2) the state law claim substantially predominates

over the federal claim, (3) the district court has dismissed all other claims over which it

had federal jurisdiction, or (4) there are exceptional circumstances."  *Blackrock Balanced

Capital Portfolio v. HSBC Bank USA, National Association*, 95 F. Supp. 3d 703, 708-09

(S.D.N.Y. 2015) (citing *Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d

234, 245 (2d Cir. 2011)).  "When deciding whether to exercise supplemental jurisdiction,

a federal court should consider and weigh the values of judicial economy, convenience,

fairness, and comity."  *Id.*

As most relevant here, courts will generally decline to exercise supplemental

jurisdiction where they dismiss all federal claims from an action.  *See, e.g.*, *Giordano v.

City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) ("it is particularly appropriate for the

district court to dismiss [common law claims] where 'the federal claim on which the state

claim hangs has [also] been dismissed'") (internal citations omitted); *Blackrock Balanced

Capital Portfolio*, 95 F. Supp. 3d at 708-09 (citing *Shahriar*, 659 F.3d at 245) (district court

"may decide to refuse to exercise supplemental jurisdiction if . . . the district court has dismissed all other claims over which it had federal jurisdiction . . . ."); *Rodriguez v. Mount Vernon Hospital*, No. 09 Civ. 5691, 2011 WL 3874814, at *2 (S.D.N.Y. Sept. 2, 2011) ("Without any federal claim, this Court declines to exercise supplemental jurisdiction over Plaintiffs remaining state law claims") (citing *Giordano*, 274 F.3d at 754); *Rosario v. International Auto Mall & Leasing Center, Inc.*, No. 12 Civ. 4059, 2013 WL 1144893, at *4 (S.D.N.Y. March 19, 2013) (dismissing state claim where the court "has no independent basis for federal jurisdiction").

That is precisely the situation here. The Court has already determined that the Complaint's RICO claims fail to state a cause of action, meaning that there is no viable federal claim remaining.  All the relevant factors favor dismissal: comity is promoted by consideration of the state claims in state court; judicial economy is preserved as this action is only at its earliest stages; pursuing claims in New York State court will be no less convenient than litigation in New York's Southern District of New York; and Plaintiff has not suggested that having to pursue its claims in state court would be any less fair than pursuing them in federal court.  The Court should decline to exercise supplemental jurisdiction over the Fourth and Fifth Causes of Action.[8]

---

[8] While the Court does not decide the issue, it notes that, as currently plead, the unjust enrichment claim is improperly duplicative of the contractual claim and therefore subject to dismissal for failure to state a claim. The Fifth Cause of Action – essentially three sentences long – merely references the employment relationship between Soler and Entretelas that is also the basis for the breach of contract claim under the Employment Agreement. It makes no new or different allegations. Accordingly, as currently plead, the claim could not survive even if the Court exercised supplemental jurisdiction. *See Clark-Fitzpatrick, Inc. v. Long Island Railroad Co.,* 70 N.Y.2d 382, 388 (1987) ("[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter"); *see also Blum v. Spaha Capital Management, LLC,* 44 F. Supp. 3d 482, 496

28

**3. Alternatively, the Court Should Dismiss the Claims on the Basis of *Forum Non Conviens***

Soler also argues, correctly, that Entretelas' common law claims should be subject to dismissal on *forum non conveniens* grounds. The doctrine of *forum non conveniens* "is a discretionary device permitting a court . . . to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000) (internal citations and quotations omitted).

In the Second Circuit, courts apply a three-step process to determine whether to dismiss an action for *forum non conveniens*. *Wilson v. Eckhaus,* 349 Fed. App'x. 649, 650 (2d Cir. 2009). First, the court must "determine[ ] the degree of deference properly accorded the plaintiff's choice of forum." *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). Second, "after determining whether the plaintiff's choice is entitled to more or less deference," the court must determine "whether an adequate alternative forum exists." *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 73 (2d Cir. 2001). Third, the court must "then balance a series of factors involving the private interests of the parties in maintaining the litigation in the competing fora and any public interests at stake." *Wiwa*, 226 F.3d at 100.

Here, all three factors weigh in favor of dismissal. First, although plaintiffs are generally entitled to some degree of deference for their chosen forum, "a foreign plaintiff is entitled to a far weaker presumption than is a United States Citizen." *Morris v. Chemical Bank*, No. 85 Civ. 9838, 1987 WL 16973, at *2 (S.D.N.Y. Sept. 10, 1987), aff'd, 847 F.2d 835 (2d Cir. 1988) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). Entretelas is

---

(S.D.N.Y. 2014) (dismissing plaintiff's unjust enrichment claim where a valid, enforceable contract existed).

not a citizen of the United States.  Rather, it is a member of a group of French companies

that operates in Argentina; and it does not allege any substantial connection to the United

States. (Complaint ¶¶ 3, 8, 26.)   Accordingly, its choice of forum warrants minimal

deference.

Second, Entretelas does not provide any reason why Argentina is an inadequate

alternative forum in which to litigate its common law claims, particularly given the fact that

the Argentina Action is apparently already pending there.  (Complaint ¶¶ 19-20.)  Third

and finally, the private and public interests favor Argentina as a forum.  After all, most if

not all of the relevant documents and witnesses are likely to be located in Argentina where

Entretelas is headquartered and where Soler largely worked.  The Complaint does not

allege any material connection or evidence tying the breach of contract or unjust

enrichment claims to this District.  Indeed, despite the allegation that there may be monies

in American bank accounts to which Entretelas has a property right, there is no substantial

nexus to the United States at all, much less New York.  In short, even if this Court chose

to exercise supplemental jurisdiction over the common law claims, they would still be

subject to dismissal on the basis of *forum non conveniens*.

### Conclusion

For the foregoing reasons, I recommend that Defendant's Motion to Dismiss be

GRANTED and the case dismissed without prejudice. The parties' remaining arguments,

to the extent not addressed herein, have been considered by the Court and found to be

without merit.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the

Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written

objections to this Report and Recommendation. Such objections shall be filed with the

Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Lewis A. Kaplan, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, New York, New York 10007. **Failure to file timely objections will result in a waiver of objections and will preclude appellate review.**

Respectfully Submitted,

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:          February 3, 2020
                New York, New York

31